FILED

2008 May-15  AM 11:45
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **PAUL JOHN CASH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.:** |
| | ) | **5:07-CV-00952-VEH** |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security** | ) | |
| **Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Paul John Cash (hereinafter "Mr. Cash") brings this action pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act.  He seeks review of a final adverse decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner" or "Secretary"), which denied his application for Supplemental Security Income (hereinafter "SSI") and Disability Insurance Benefits (hereinafter "DIB").[1]  Mr. Cash timely pursued and exhausted his administrative remedies available before the Commissioner.  The case is ripe for review pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act.

---

[1] 42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

## FACTS AND PROCEDURAL HISTORY

Mr. Cash was 48 years old at the time of his hearing before the Administrative Law Judge (hereinafter "ALJ"). (Tr. 248). He has an education beyond high school, having earned an Associate's Degree in applied science. (Tr. 251). His past work experience includes positions as a civil engineering design technician, janitor, mechanic, power line erector, and production supervisor. (Tr. 270-73). Mr. Cash claims disability due to coronary artery disease and hypertension, with an alleged onset date of January 30, 2005. (Doc. 10 at 1). He has since worked two contract jobs as a design technician during the period spanning June 2005 to his last date of employment in March 2006. (Tr. 14-15).

Mr. Cash protectively filed a Title II application for a period of disability and DIB, as well as a Title XVI application for SSI, on February 4, 2005. (Tr. 12). His claims were initially denied on May 20, 2005. (*Id.*). Mr. Cash filed a timely request for a hearing before an ALJ on June 9, 2005. (*Id.*). The hearing took place on November 28, 2006. (Tr. 119). The ALJ determined that Mr. Cash was not disabled and denied his claim on January 24, 2007. (Tr. 20).

Mr. Cash filed a complaint on May 22, 2007, asking this court to review the decision of the ALJ. (Doc. 1). This court has carefully considered the record and affirms the decision of the ALJ.

2

## STANDARD OF REVIEW[2]

The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales,* 402 U.S. 389, 390, 41, 91 S. Ct. 1420, 1421, 1432, 28 L. Ed. 2d 842 (1971); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988); *Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1983); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth*, 703 F.2d at 1239. This court will determine that the ALJ's opinion is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* Substantial evidence is "more than a scintilla, but less than a preponderance." *Bloodsworth*, 703 F.2d at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish the entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the

---

[2]In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

Regulations promulgated thereunder.[3]   The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months."   20 C.F.R. § 404.1505(a).   To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques."   20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled.   20 C.F.R. § 404.1520(a)(4)(i-v).   The Commissioner must determine in sequence:

(1)   whether the claimant is currently employed;
(2)   whether the claimant has severe impairment;
(3)   whether the claimant's impairment meets or equals an impairment listed by the Secretary;
(4)   whether the claimant can perform her past work; and
(5)   whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to former applicable C.F.R.

---

[3]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, as current through March 27, 2008.

4

section), *overruled on other grounds by Johnson v. Apfel,* 189 F.3d 51 (7th Cir. 1999); *accord*, *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps one and two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the Secretary to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord*, *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show that such work exists in the national economy. *Foote*, 67 F.3d at 1559.

## FINDINGS OF THE ADMINISTRATIVE LAW JUDGE

The ALJ found that Mr. Cash had engaged in substantial gainful activity from September 2005 to March 2006, but had not engaged in substantial gainful activity after March 2006. (Tr. 14). The ALJ then determined that Mr. Cash's impairments from his coronary artery disease and subsequent surgeries[4] were severe. (Tr. 15). However, the ALJ then found that Mr. Cash did not have an impairment or a combination of impairments that met or medically equaled one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4 of the Social Security Regulations, 20 C.F.R. Part 404. (*Id.*).

---

[4]In particular, the ALJ noted Mr. Cash's status following a "5-vessel coronary artery bypass grafting surgery in March 1998 and angioplasty with stenting in January 2005 and June 2006." (Tr. 15).

5

The ALJ then assessed a residual functional capacity to perform a limited range of light work, with an ability to occasionally lift 20 pounds and stand or sit for 6 hours a day. (*Id.*). He determined that Mr. Cash is unable to perform past relevant work; however, relying on the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (hereinafter the "grids") and the testimony of a vocational expert, he concluded that, considering Mr. Cash's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that he could perform including occupations such as a cashier II, an office helper/worker, and a photocopy machine operator. (Tr. 19-20). The ALJ then found that Mr. Cash had not been under a disability from the alleged onset date of January 30, 2005, to the date of the hearing; thus, he was not eligible to receive DIB under §§ 216(i) and 223(d) of the Social Security Act or SSI payments under § 1614(a)(3)(A) of the Social Security Act. (Tr. 20).

## ANALYSIS

The court can reverse a finding of the Secretary if it is not supported by substantial evidence. 42 U.S.C. § 405(g). "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th

Cir. 1980)).[5]  Mr. Cash alleges that the ALJ's decision was not supported by substantial evidence and that improper legal standards were applied.  (Doc. 10 at 14). In its review, this court finds that the ALJ's decision was supported by substantial evidence and that the ALJ applied the correct legal standard.

### I.  THE ALJ'S DETERMINATION OF RESIDUAL FUNCTIONAL CAPACITY WAS BASED ON PROPER LEGAL STANDARDS AND SUBSTANTIAL EVIDENCE.

Mr. Cash alleges that the ALJ's determination of his residual functional capacity (hereinafter "RFC") was not supported by substantial evidence.  An individual's RFC "is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1545(a)).

The RFC is "based on all the relevant evidence in [a claimant's] case record." 20 C.F.R. § 404.1545(a)(1); *see also* 20 C.F.R. § 404.1545(a)(3) ("We will assess your residual functional capacity based on all of the relevant medical and other evidence.").  "The assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an

---

[5]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence." SSR 96-5p (July 2, 1996).[6]

"In general, [the claimant is] responsible for providing the evidence [the Social Security Administration] will use to make a finding about your residual functional capacity." 20 C.F.R. § 404.1545(a)(3). However, at the same time, the Social Security Administration is "responsible for developing [the claimant's] complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [] get medical reports from [the claimant's] own medical sources." (*Id.*). In making the RFC assessment, the ALJ must consider the impact from any severe impairments as well as any non-severe conditions. 20 C.F.R. § 404.1545(a)(2).

In challenging his RFC of light work, Mr. Cash first contends that the ALJ's statement, "[a]fter consideration of all of the above," is conclusory and fails to cite specific evidence as to how the RFC was determined. (Doc. 10 at 8). To the contrary, the ALJ explained in great detail in the two and a half pages preceding this

---

[6]Although they lack the force of regulations, Social Security Rulings are "binding on all components of the Social Security Administration." 20 C.F.R. § 402.35(b)(1); *see also McCloud v. Barnhart*, 166 Fed. Appx. 410 (11th Cir. 2006), 2006 WL 177576 (citing SSR 96-6p as authoritative, for example).

paragraph of his decision the evidence used to support and the reasoning behind his conclusion. (Tr. 16-18). Mr. Cash submits that "a blanket reference to 'all of the above' is not meaningful and does not constitute substantial evidence." (Doc. 10 at 8). However, the only alternative to this would be to require the ALJ to paraphrase every single point he had just made in a conclusion accompanying his statement of the RFC, which is redundant. The only situation in which inclusion by reference would be a concern would be if the ALJ had not given any reasoning behind his assessment of the RFC; however, he gave Mr. Cash two and a half pages, single-spaced, of extensive support for his RFC assessment.

In summarizing the aforementioned two and a half pages, the ALJ explained his assessment of Mr. Cash's RFC as follows. The ALJ noted that Mr. Cash testified as to several limitations on his ability to function in everyday life; however, the ALJ concluded that Mr. Cash's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible and were not supported by the medical evidence of record. (Tr. 16).

After examining in detail Mr. Cash's history of cardiac problems, the ALJ found that there were large gaps in his treatment history and that Mr. Cash had pursued no long-term follow up treatment with any of his physicians. (Tr. 17). The ALJ also recognized that, according to the medical records, Mr. Cash quickly

improved after each cardiac procedure. (*Id.*). More specifically, the ALJ pointed out that Mr. Cash "returned to work and worked at substantial gainful activity levels from September 2005, through March 15, 2006[.]" (*Id.*). The ALJ further noted that a treating physician, Dr. Wright, had concluded that Mr. Cash's sharp shooting pains were not "cardiac-type pain." (*Id.*). Additionally, the ALJ stated that the records of treating physicians showed no complaints of side effects from Mr. Cash's medication, which was inconsistent with his testimony. (*Id.*).

Similarly, the ALJ lent no credence to Mr. Cash's visual impairments due to a failure to seek treatment for his vision problems. (Tr. 17-18). Furthermore, Mr. Cash's ability to drive and hold a driver's license were identified as inconsistent with his statements that he could not read or sit at a computer. (Tr. 18). The ALJ cited Mr. Cash's failure to seek any treatment for back pain since February 18, 2005, as being in conflict with his testimony as to the severity of his back pain. (*Id.*). Likewise in contradiction with Mr. Cash's allegations about the need to lie down during the day, the ALJ pointed out that no physician had recommended any periods of daily rest for Mr. Cash. Lastly, the ALJ noted that his RFC assessment was consistent with the initial opinion provided by the state medical consultant. (*Id.* ("It is noted that this residual functional capacity assessment is consistent with the opinion of physicians who reviewed the evidence at the initial consideration level.");

10

*see generally* Tr. 193-200).   Thus, the record clearly reflects that the ALJ's assessment of Mr. Cash's RFC was supported by substantial evidence.

Mr. Cash also alleges that the fact that none of his treating physicians made any statement, evaluation, or opinion regarding his physical limitations led to an impermissible inference by the ALJ that there were no restrictions which, according to Mr. Cash, is not based upon proper legal standards.  (Doc. 10 at 9).  However, as previously explained, the ALJ based his evaluation of the RFC on the inconsistency of the medical evidence with Mr. Cash's testimony regarding the limiting effects of his impairments as well as the results of Mr. Cash's initial RFC assessment.  (Tr. 16-18).

Mr. Cash does not dispute that the RFC assessment performed by the state agency medical consultant on May 13, 2005, is consistent with the ALJ's RFC determination.  (Doc. 10 at 9).  Instead (and without citing to any case authority on point), Mr. Cash complains about the date on which the initial RFC review was done versus when the ALJ issued his finding of no disability in January 2007.  (*Id.*).  Mr. Cash further argues that "the ALJ's mere reference to the opinion of the State Agency physician does not constitute substantial evidence."  (*Id.*).

However, "state agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the

medical issues in disability claims under the Act. . . .  Administrative law judges and the Appeals Council [are required to] consider their findings of fact about the nature and severity of an individual's impairment(s) as opinions of nonexamining physicians and psychologists."  SSR 96-6p (July 2, 1996); *id*. "Administrative law judges and the Appeals Council . . . may not ignore these opinions[.]"); *see also McNabb v. Barnhart*, No. 5:04-CV-1407-KOB, Doc. 12 at 9 (N.D. Ala. Mar. 14, 2006) (Bowdre, J.) ("In this case, the ALJ appropriately gave little weight to the alleged opinions of McNabb's treating physicians and substantial weight to the state agency medical consultant's findings that McNabb was capable of performing light work because such a conclusion was supported by the medical evidence contained in the record as a whole.").  In any event, the ALJ did not rely upon medical consultant evidence alone to support his RFC determination.

Additionally and in reliance upon several different cases, the Commissioner in his brief properly asserts that the lack of any medical source statement[7] from a treating physician does not always invalidate an ALJ's assessment of the claimant's RFC.  For example, in *Graham v. Apfel*, 129 F.3d 1420 (11th Cir. 1997), as the

---

[7]"Medical source statements are medical opinions submitted by acceptable medical sources, including treating sources and consultative examiners, about what an individual can still do despite a severe impairment(s), in particular about an individual's physical or mental abilities to perform work-related activities on a sustained basis."  SSR 96-5p (footnote omitted).

Eleventh Circuit stated regarding the ALJ's functional assessment of the claimant:

> Here, the record as a whole is neither incomplete nor inadequate. Instead, the record was sufficient for the ALJ to evaluate Graham's impairments and functional ability, and does not show the kind of gaps in the evidence necessary to demonstrate prejudice.
>
> . . .
>
> Furthermore, unlike the claimant in *Brown*, Graham was able to explain to the ALJ how her impairment affected her abilities.  The ALJ's opinion also thoroughly evaluated Graham's medical history.  It detailed Graham's testimony and symptoms, described her functional limitations and daily activities, and then compared these with the functional requirements for light work.
>
> Finally, Graham has failed to point to anything in the record which suggests that additional medical evidence specific to her situation might be gathered, nor has she alleged undiscovered facts or an undeveloped avenue of inquiry. Graham has failed to demonstrate evidentiary gaps in the record which have resulted in prejudice sufficient to justify a remand to the Secretary.

*Graham*, 129 F.3d at 1423.  Similar to *Graham*, the court is of the opinion that the ALJ's RFC determination in this case is supported by substantial evidence in the record despite the absence of a medical source statement from one of Mr. Cash's treating physicians.[8]  *See also Osborn v. Barnhart*, 194 Fed. Appx. 654, 665 (11th

_____

[8]The court recognizes that it has sometimes remanded a social security denial determination when the record lacked a medical source statement from a treating physician, but those instances have also involved additional grounds for reversal and are therefore distinguishable. *See, e.g., Clemmons v. Astrue*, No. 3:06-CV-1058-VEH, Doc. 22 at 8 (N.D. Ala. June 11, 2007) (reversing upon collective grounds of (1) lack of medical source statement from treating physician, (2) lack of substantial evidence to support negative credibility finding, and (3) misapplication of Medical Vocational Guidelines); *Baker v. Astrue*, No. 5:07-CV-1174-VEH, Doc. 12 at 19-20, 22 (N.D. Ala.

Cir. 2006) (affirming disability denial determination when "the medical evidence in this case presents diagnoses, but no descriptions of limitations on [the claimant's] functional capacity or ability to work <u>other than the state agency assessments</u>") (emphasis added).

Unlike *Lamb v. Bowen*, 847 F.2d 698 (11th Cir. 1988) (*see* Doc. 10 at 9), this case does not involve impermissibly favoring the opinions of non-treating physicians concerning the ability to do light work over contrary evidence provided by treating physicians regarding a claimant's diagnoses and limitations, including a report that the "condition was not compatible with [the plaintiff's] former employment" without any reference to light work. *Id.* at 703. As the Eleventh Circuit stated in *Lamb*, "[s]uch silence is equally susceptible to either inference, therefore, no inference should be taken." *Id.*

Also dissimilar from *Coleman v. Barnhart*, 264 F. Supp. 2d 1007 (S.D. Ala. 2003) (*see* Doc. 10 at 9-10), Mr. Cash is not a claimant with "numerous severe impairments." *Coleman*, 264 F. Supp. 2d at 1010. More particularly, Mr. Coleman's severe impairments included: "'obesity; Graves' disease with Graves[']

---

Mar. 27, 2008) (reversing based upon (1) lack of medical source statement from treating physician when ALJ discounts opinion regarding claimant's functional abilities and limitations provided post-hearing, and (2) lack of good cause explaination why treating physician's opinion is not due to be accorded substantial or considerable weight).

ophthalmopathy; post surgical hypothyroidism; pretibial myxedema; diabetes mellitus; gastroesophageal reflux disease [;] and borderline intellectual functioning.'" *Id.* at 1009 n.1.  In contrast, Mr. Cash's severe impairments are limited to coronary artery disease and his related subsequent surgeries.  Additionally, Mr. Coleman was slated for the more physically-demanding category of <u>medium</u> work instead of for <u>light</u> work like Mr. Cash.  *Id.* at 1010 ("The undersigned finds it unclear how the ALJ found plaintiff <u>could meet the threshold physical requirements of medium work</u>, in absence of a physical capacities evaluation ("PCE") completed by a treating or examining physician, particularly in light of plaintiff's numerous severe impairments.") (emphasis added).

The Commissioner also relies upon the case of *Moore v. Barnhart*, 405 F.3d 1208 (11th Cir. 2005) for the point that consideration of factors other than medical source statements is appropriate when determining a claimant's RFC.  In *Moore*, the Eleventh Circuit upheld the ALJ's RFC determination which was based in part upon inconsistencies with the claimant's daily activities and subjective claims of impairment.  *Id.* at 1213.  Similarly, in this case, the ALJ based his RFC assessment in part upon on the inconsistencies between Mr. Cash's alleged physical limitations and the frequency of treatment sought, daily activities, and improvement of symptoms as sustantiated in the medical evidence of record.  (Tr. 16-18).  Thus, the ALJ did not

rely on an inference of higher functional capacity based on a lack of opinions from treating physicians and, therefore, applied the correct legal standards in making his assessment of Mr. Cash's RFC.

## II.  THE ALJ DID NOT FAIL TO FULLY AND FAIRLY DEVELOP THE RECORD BY NOT ORDERING A CONSULTATIVE EXAMINATION.

The ALJ has a duty to develop the record fully and fairly. *Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999) (citing *Graham v. Apfel*, 129 F.3d 1420, 1422-23 (11th Cir. 1997)).  In order to be supported by substantial evidence, the ALJ must have before him sufficient facts upon which to make an informed decision. *Ford v. Sec. of Health & Human Serv.*, 659 F.2d 66, 69 (5th Cir. 1981).  The Regulations permit the ALJ to order a consultative examination when the claimant's medical sources cannot or will not give sufficient medical evidence regarding the claimant's impairment to make an informed decision regarding disability.  20 C.F.R. § 404.1517. The Eleventh Circuit has recognized that "[i]t is reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision." *Reeves v. Bowen*, 841 F.2d 383, 385 (11th Cir. 1988) (citing *Ford*, 659 F.2d at 69); *see also Caulder v. Bowen*, 791 F.2d 872, 878 (11th Cir. 1986) (requiring the ALJ to order a consultative examination when it is recommended by a physician and fills a gap in the material facts).  However, the

16

Eleventh Circuit has also held that the ALJ's duty to develop the record does not include ordering a consultative examination when the record contains sufficient evidence upon which the ALJ can make an informed decision. *Ingram v. Comm'r of Social Sec. Admin*, 496 F.3d 1253, 1269 (11th Cir. 2007).

Mr. Cash alleges that the ALJ's failure to order a consultative examination to evaluate his RFC in the absence of medical opinions by Mr. Cash's treating physicians regarding his RFC constitutes reversible error. (Doc. 10 at 10). However, along this line of reasoning, the ALJ would only have been required to order a consultative examination if he based his assessment of Mr. Cash's RFC on the lack of an opinion from a treating physician, which would, as alleged, not be an informed decision. As previously indicated however, the ALJ's assessment of the RFC was based not on this lack of medical opinions regarding Mr. Cash's functional capacity but, instead, was based on the failure of the medical evidence of record to corroborate the severity and limitations of Mr. Cash's severe and non-severe impairments. (Tr. 16-18). The ALJ thoroughly analyzed and cited numerous records pertaining to Mr. Cash's treatment for cardiac problems, vision, and back pain. (*Id.*).

Additionally, the ALJ relied upon the state medical consultant's comparable initial RFC assessment of Mr. Cash. Consequently, the ALJ's RFC determination was not made in the absence of any supportive functional capacity testing.

17

Finally, this court has already concluded that the ALJ's decision was supported by substantial evidence; thus, it follows that there was sufficient evidence upon which he could have made an informed decision.   Therefore, the ALJ was not under any duty to order a consultative examination.

### III.  THE ALJ PROPERLY EVALUATED PLAINTIFF'S SUBJECTIVE COMPLAINTS AND, THEREFORE, DID NOT  ERR AS A MATTER OF LAW.

Mr. Cash alleges that the ALJ improperly applied the Eleventh Circuit pain standard in evaluating his subjective complaints. (Doc. 10 at 11-12).  In determining whether to credit a claimant's subjective testimony of pain or other symptoms, the pain standard requires:

> (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986).  A claimant's statements about pain or other symptoms do not alone establish disability.  *See* 20 C.F.R. §§ 404.1529(a), 416.929(a).  Instead, medical signs and laboratory findings must depict medical impairments that could reasonably be expected to produce the alleged symptoms.  *See id;* s*ee also Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991) (citing *Landry*, 782 F.2d 1551).  When an impairment that could reasonably be

expected to produce the symptom(s) alleged has been shown, the intensity and persistence of the symptom(s), such as pain, will be evaluated based on all the evidence. *See* 20 C.F.R. §§ 404.1529(c), 416.929(c).

In this case, as noted in the plaintiff's brief, the first prong of the standard was met; the ALJ found that there was evidence of underlying medical conditions. (Tr. 15; *see also* Doc. 10 at 12). However, Mr. Cash challenges the ALJ's reasons for discrediting his testimony as to his symptoms. (Doc. 10 at 12-13). The Eleventh Circuit has held that "[i]f the ALJ decides not to credit a claimant's testimony as to [his] pain, he must articulate explicit and adequate reasons for doing so." *Foote*, 67 F.3d at 1561-62. The record shows that the ALJ did indeed "articulate explicit and adequate reasons" for his findings of negative credibility. (Tr. 16-18). These reasons are repeated as follows.

As relates to Mr. Cash's coronary artery disease, the ALJ specifically found that, although Mr. Cash was hospitalized on June 20, 2006 for chest pain and underwent a cardiac catheterization, Dr. Wright later determined in a follow-up visit on September 5, 2006, that there was no evidence of anginal symptoms and that sharp shooting pains experienced by Mr. Cash were not cardiac in nature. (Tr. 17). Looking to findings of treating physicians in the medical evidence of record, the ALJ found that Mr. Cash had improved quickly after each of his cardiac procedures in

19

1998, 2005, and 2006.  (*Id.*).  Additionally, the ALJ cited the lack of complaints to his treating physicians regarding side effects of his medication as inconsistent with Mr. Cash's testimony regarding the limitations of such side effects.  (*Id.*).  Lastly, the ALJ looked to the lack of cardiac treatment between June 24, 2005, and June 20, 2006, as being inconsistent with Mr. Cash's testimony regarding the persistent nature and duration of his symptoms.  (*Id.*).

As previously stated, the ALJ relied on the lack of treatment since 2002 for Mr. Cash's visual problems, as well as his ability to drive, as evidence that challenged the credibility of Mr. Cash's statements that he could not read or sit at a computer.  (Tr. 17-18).  Examining his complaints of back pain, the ALJ noted that his failure to seek treatment for his symptoms after his last visit to a chiropractor on February 18, 2005 as being inconsistent with Mr. Cash's complaints of "back pain of such severity as to preclude him from lifting or sitting or standing for long periods of time."  (Tr. 18). These properly articulated reasons for rejecting Mr. Cash's testimony as to his subjective symptoms and their limiting effects show that the ALJ stayed within the framework of the Eleventh Circuit pain standard.  Additionally, the ALJ's specific reliance on findings of treating physicians and the medical evidence in general show that the ALJ did not substitute his judgment for that of a medical expert as alleged by Mr. Cash.  (Tr. 17-18; *see also* Doc. 10 at 13).

20

Lastly, Mr. Cash asserts that the vocational expert testified that, if his testimony were accepted as true, that there would be no jobs he could perform and that he would be disabled.  (Doc. 10 at 11-12, 13).  Such a conclusion is taken out of context and fails to consider the full scope of the question asked of and response from the vocational expert.  More specifically, a hypothetical posed to the vocational expert by counsel for Mr. Cash asked if <u>all</u> if Mr. Cash's symptoms and limitations were found to be credible "<u>to the point that [Mr. Cash] wouldn't be able to perform any work eight hours a day, forty hours a week</u>[,]," whether there would be jobs available; the vocational expert responded that this would preclude all jobs.  (Tr. 278 (emphasis added)).

In citing this response in his brief, Mr. Cash fails to include the portion which asked the vocational expert to consider an inability to work 40 hours a week. Certainly under SSR 96-8p,[9] the ability of a claimant to work regularly is an important inquiry.  However, the response of the vocational expert does not support the legal assertion set out in Mr. Cash's brief that "the Vocational Expert testified that [Mr. Cash's] testimony establishes an inability to do any kind of work[.]"  (Doc. 10 at 13).  More importantly and regardless, because the ALJ otherwise adequately

---

[9]SSR 96-8p states that an RFC must be based on a claimant's ability to perform work on a "regular and continuing basis," which is defined as "8 hours a day, for 5 days a week, <u>or an equivalent</u> work schedule."  SSR 96-8p (July 2, 1996) (emphasis added) (footnote omitted).

discredited Mr. Cash's subjective complaints, it is similarly appropriate for him to reject this particular hypothetical question and the related response that was favorable to Cash.

## CONCLUSION

Based upon its evaluation of the evidence in the record and the submissions of the parties, the court finds that the Commissioner's final decision is supported by substantial evidence and the Commissioner applied the proper legal standard. Accordingly, the decision of the Commissioner will be affirmed by separate order.

**DONE** and **ORDERED** this the 15th day of May, 2008.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

22